# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **FREDDY LAYNE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:09CV00011 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Clarence E. "Bud" Phillips, Clarence E. Phillips, P.C., Castlewood, Virginia, for Plaintiff; Kenneth DiVito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Freddy Layne filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Layne filed for benefits in 2006, alleging disability since December 14, 2005, due to neck and back problems, headaches, hip pain, left leg pain, restless leg syndrome, depression, difficulty sleeping, and high blood pressure. Layne's claim was denied initially and upon reconsideration. Layne had a hearing before an Administrative Law Judge ("ALJ"), during which Layne, represented by counsel, and a vocational expert testified. The ALJ concluded that Layne was not disabled and denied his claim. After the Social Security Administration Appeals Council denied review, Layne filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Layne was forty-six years old when he filed for benefits, a person of younger age under the regulations. See 20 C.F.R. § 404.1563(c) (2009). Upon graduation from high school, Layne worked as a truck driver or heavy equipment operator. In 2005, while working as a heavy equipment operator at a coal mine, Layne was thrown from the cab of a coal loader in an accident. Layne has not worked since the accident.

Immediately after the accident, Layne began complaining of lower back pain that radiated into his legs. Layne repeatedly sought help from doctors who, after performing an MRI and other tests, concluded that Layne had a right C4-5 disc herniation, "a mild bulge on the left C7 disc" that was not "very impressive" and chronic degenerative changes at C5-6 and C6-7. ( R. at 19.) Layne underwent a C4-5 anterior cervical discectomy and fusion procedure with a plate. After the surgery, doctors prescribed that Layne engage in physical therapy, loose weight, and quit smoking so his bones could properly heal. Layne began physical therapy and at follow-up appointments, doctors stated that Layne was recovering well, but that he complained of lower back pain and he had a limited range of motion.

Within three months after the surgery, Layne's doctor opined that Layne could work with some restrictions: he was limited to lifting forty pounds and carrying thirty pounds; he could walk for three to five hours continuously, sit for three to five hours continuously, and drive three to five hours with some postural restrictions. The physician recommended that Layne manage his "subjective" pain with exercise and stated that Layne needed minimal narcotics and analgesics to manage pain. (R. at 274.)

During the next two years, Layne repeatedly saw physicians about what he described as back pain radiating into his neck, legs, or hip. Layne was treated by two

different physicians, who both opined that Layne had recovered well from the neck operation, he had a good ability to walk and no neurological deficits, and that Layne did not need additional surgery. Doctors stated that Layne had good reflexes, extension, and did not appear to be in distress. In addition, doctors repeatedly asked Layne to quit his two-pack-a-day smoking habit and to lose weight, which he failed to do.

In the course of the administrative process below, two state agency doctors reviewed Layne's file and stated he could perform a limited range of light work.

In 2007, Layne was evaluated by a psychologist, Dr. Nies, at the request of his attorney. Dr. Nies found that "psychological factors" played a role in Layne's symptoms (R. at 295) and that "exaggeration of anxiety or fears must be considered given that secondary gain is present" (R. at 294). Nevertheless, Dr. Nies concluded that the interaction of Layne's "mood disturbance and chronic pain/functional limitations . . . do not support return to work." (R. at 296.)

The ALJ found that although Layne could not return to his past job as a heavy equipment operator, Layne had the residual functional capacity to perform light work with some postural and movement restrictions. In light of the evidence, the ALJ concluded that Layne was not disabled.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity ("RFC"), which is then compared with the physical and

mental demands of the claimant's past relevant work and of other work present in the national economy. *McLain*, 715 F.2d at 869.

My review is limited to a determination of whether substantial evidence exists to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The ALJ found that Layne had not worked during the period of alleged disability and that Layne's back disorder and hypertension constituted severe impairments. The ALJ concluded, however, that these conditions did not meet the

severity of a listed impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (2009). The ALJ found that Layne was unable to perform past relevant work, but that Layne could perform light work that required limited pushing, pulling, or reaching overhead, and no climbing, as well as only occasional stooping, kneeling, or crouching.

Layne alleges that under 20 C.F.R. §§ 404.1529 and 416.929 (2009), the ALJ improperly determined whether Layne was disabled due to pain. I disagree.

The Fourth Circuit uses a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment that could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *Craig*, 76 F.3d at 594. Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *Id*.

Substantial evidence exists in the record to support the ALJ's conclusion that Layne's claims of disabling pain were not credible. Physical exams of Layne performed by doctors showed that Layne has a full range of motion in his neck, no neurological deficits, good flexion and extension, and no weakness in his lower back. The objective evidence submitted by Layne fails to show a medical ailment that could

create disabling pain from which he claims to suffer. Doctors opined that Layne had recovered from his back surgery and had the ability to return to work and to lift up to fifty pounds. The ALJ found, based on the evidence, Layne had "manifested and magnified minor complaints" and that his complaints of back pain were subjective. (R. at 26.) The ALJ did not err in concluding that Layne's complaints should not be relied upon to determine whether Layne's pain was disabling.

While Dr. Nies, the examining psychologist, opined that Layne was disabled from working because of a combination of his mental and physical symptoms, the ALJ was justified in rejecting that conclusion based on other evidence in the case. In his decision, the ALJ considered Dr. Nies' written report and opinion at length and described the other evidence of record that the he found more credible. (R. at 27.)

Layne contends the ALJ erred by relying upon non-examining state agency physicians for the ALJ's findings regarding Layne's residual functional capacity. Layne's argument is flawed because the ALJ may rely upon the conclusions of non-examining physicians when the conclusions are consistent with the record. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Here, the non-examining state physicians conclusions—that Layne should not lift more than twenty pounds and should not carry more than ten pounds —were more restrictive than the conclusions reached by Layne's treating physicians. The record also indicated that Layne's

treating physicians thought Layne did not need further surgery, did not suffer from serious physical maladies, had a good range of motion and flexibility, could return to work, and should begin a regular course of walking to improve his back problems. Thus, the conclusions of non-treating physicians were clearly consistent with evidence in the record and the ALJ did not err in relying upon these findings.

Layne's final argument is that the ALJ incorrectly weighed Layne's complaints against his daily activities. This argument is without merit. An ALJ may consider a variety of factors when evaluating complaints of pain, including a claimant's daily activities. See 20 C.F.R. § 404.1529(c)(3)(I) (2009). Further, to reach a finding that Layne's allegations were not credible, the ALJ did more than merely consider Layne's daily activities. The ALJ reviewed medical records, including opinions by Layne's treating physicians, laboratory test results, results from psychological tests, opinions by various non-treating physicians, and Layne's responses during an administrative hearing. The ALJ did not rely solely upon Layne's self-described daily activities to reach a conclusion regarding Layne's RFC. Rather, the ALJ relied upon a host of information in reaching the conclusion that Layne could still work.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: January 11, 2010

 /s/ JAMES P. JONES
 Chief United States District Judge